IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NATIONAL NURSES ORGANIZING COMMITTEE-MISSOURI & KANSAS/ NATIONAL NURSES UNITED, <br><br> Plaintiff, <br><br> v. <br><br> MIDWEST DIVISION-RMC, LLC d/b/a RESEARCH MEDICAL CENTER, <br><br> Defendant. | Case No. 20-CV-00903-SRB |

## **ORDER**

Before the Court is Defendant Midwest Division-RMC, LLC d/b/a Research Medical Center's ("RMC") Motion to Dismiss Plaintiff's Complaint. (Doc. #11.) For the reasons stated below, the motion is denied.

### I. BACKGROUND

This action arises from a collective bargaining agreement between Defendant RMC and Plaintiff National Nurses Organizing Committee-Missouri & Kansas/National Nurses United (the "Union"). The Union represents employees of various employers in Missouri, including a bargaining unit of registered nurses ("RN Bargaining Unit") employed by RMC, which operates an acute care hospital in Kansas City, Missouri. The Union filed suit pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and seeks an order from the Court compelling arbitration under the parties' Collective Bargaining Agreement ("CBA").

The following facts, taken from the Union's complaint, are briefly summarized below. The Union alleges that on June 24, 2020, RMC violated the CBA by implementing new staffing plans (or "staffing grids") that "displaced bargaining unit nurses with supervisory nurses in the

performance of bargaining unit work." (Doc. #1, ¶ 10.)  Put another way, the Union contends RMC's staffing plan changes required supervisory nurses to perform work that, under the terms of the CBA, should be performed by members of the RN Bargaining Unit.

A "grievance" is defined in Article 14 of the CBA as "an alleged breach of the terms and provisions of this Agreement."  (Doc. #1-1, p. 18.)[1]  Pursuant to Article 2, the CBA's arbitration provision, any grievance not resolved after completion of the grievance procedures outlined in Article 14 may be advanced for arbitration.  Based on RMC's implementation of new staffing plans, the Union initiated the grievance procedure outlined in Article 14 by filing a grievance (the "Grievance") on July 15, 2020.  The Union contends RMC violated Article 3 of the CBA, which states in relevant part:

ARTICLE 3
BARGAINING UNIT WORK

> It is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work. It is understood, however, that nothing in this Agreement shall preclude members of management from performing bargaining unit work when such work occurs during the course of training, in the event of an emergency, due to scheduled or unscheduled employee absences, due to an increase in patient census or workload, consistent with past practice and/or when such work or assistance is otherwise necessary for the timely provision of quality patient care.

(Doc. #1-1, p. 10.)  On July 19, 2020, RMC informed the Union that it would not process the Grievance.

Following RMC's refusal to arbitrate, the Union contacted the Federal Mediation and Conciliation Service ("FMCS") as instructed in Article 2 of the CBA and requested a list of arbitrators.  On July 23, 2020, the FMCS responded to the Union's request and provided the parties with a panel of proposed arbitrators.  On July 28, 2020, RMC acknowledged that it had

---

[1] All page citations herein refer to pagination automatically generated by the CM/ECF filing system.

received the FMCS arbitration panel but reiterated that the matter was "neither grievable nor arbitrable" under the CBA, and again refused to arbitrate the Grievance. (Doc. #1-5, p. 2.)

Based on RMC's refusal to arbitrate the Grievance, the Union filed suit on November 11, 2020, seeking an Order compelling RMC to proceed to arbitration. The Union additionally asks the Court to direct RMC to select an arbitrator with the Union, and to award the Union attorney's fees and any costs incurred for the suit. RMC subsequently filed the instant motion to dismiss the Union's complaint under Federal Rule of Civil Procedure 12(b)(6).

**II. LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). A court must consider all facts alleged in the complaint as true when considering a motion to dismiss. *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). In reviewing a motion to dismiss, courts "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation and quotation marks omitted).

A party seeking to compel arbitration pursuant to a collective bargaining agreement must demonstrate (1) the existence of a valid agreement to arbitrate, and (2) that the specific dispute at issue falls within the scope of that agreement. *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (citations omitted); *see also United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Hussmann Corp.*, No. 15-CV-278, 2016 WL 775179, at *2 (E.D. Mo. Feb. 29, 2016). "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam, Inc.*, 414 F.3d at 975 (citation and quotation marks omitted) (noting "[a]n order compelling arbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). "[T]he question of scope asks only whether the parties have agreed to arbitrate a particular claim and does not reach the potential merits of the claim." *Id.* (citations omitted).

### III. DISCUSSION

The parties do not dispute the validity of the CBA or whether the parties are bound to its terms. Consequently, the key issue is whether the Union has adequately stated that its grievance falls within the scope of the CBA's arbitration provision. RMC contends the Grievance at issue is not arbitrable because it is a staffing plan dispute that, pursuant to Article 38 of the CBA, is exempt from the arbitration provision of the CBA. The Union disagrees, arguing its complaint adequately alleges a grievance subject to arbitration and should survive dismissal.

RMC's argument relies on Article 38 in the CBA which states in relevant part:

ARTICLE 38<br>STAFFING COMMITTEE

SECTION 1. GENERAL

A. The Hospital shall have a staffing system based on the assessment of patient needs in conformance with the accreditation requirements of The Joint Commission

4
Case 4:20-cv-00903-SRB    Document 27    Filed 02/24/21    Page 4 of 7

and a Hospital Staffing Plan as required by the Missouri Department of Health & Human Services.

B. The Hospital's Staffing Plan provides the basis for acuity based staffing decisions within the Hospital by providing guidance on Nurse-to-patient staffing levels for staffing coverage in patient care units at the Hospital. A copy of the approved nurse staffing levels from the Hospital Staffing Plan shall be provided to the National Nurses United Professional Practices Committee (NNUPPC) members and made available to the bargaining unit RNs in all patient care departments.

C. Changes to the staffing plan for patient care services shall be developed based on the level and scope of care that meets the needs of the patient population, including patient acuity, the frequency of the care to be provided, and a determination of the level of staff that can most appropriately provide the type of care needed.

D. The Hospital and the Union shall establish a Nurse Staffing Committee ("Committee") to review the staffing standards and plans contained within each patient care department staffing guideline.

1. The mutual goal of the Committee is to review, monitor, and where appropriate adjust the applicable Nurse-to-patient staffing levels set forth in the Hospital Staffing Plan for Nurses for each nursing unit where bargaining unit RNs are assigned to work. . . .

    . . .

E. The parties agree that the number of staff assigned to a Unit may vary depending upon various factors, such as the patient acuity on the unit, and patient census levels. Variations in staffing levels, either up or down, that are justified by patient acuity shall not be considered deviations from the applicable nurse staffing level. The parties recognize that deviations from the staffing levels may be necessary due to changes in patient volume, unscheduled absences and other factors. The Hospital will make reasonable efforts to return the Unit to staffing that meets the applicable Nurse-to-patient staffing levels when deviations from the staffing levels occur, including but not limited to utilizing PRN, agency, on call, and overtime hours. A Nurse's temporary absence from the Unit during the course of his or her shift shall not be considered deviations from the staffing plan.

F. Disagreements among the Committee members or between the Hospital and the Union regarding issues covered by this Article, including disagreements related to staffing plans and the methods to monitor compliance with the plans, that cannot be resolved mutually by the parties shall not be subject to the grievance and arbitration provisions of this Agreement, any dispute resolution process other than mediation, as set forth in Paragraph G below, or administrative or other legal challenge. Upon a vote of at least fifty percent (50%) of the Committee members, unresolved disputes of among the Committee members that involve a pattern of nurse staffing on a particular Unit that is inconsistent with the applicable staffing levels may be referred to mediation, as set forth in Paragraph G below. No more

5

Case 4:20-cv-00903-SRB   Document 27   Filed 02/24/21   Page 5 of 7

than three (3) disputes may be referred to mediation each contract year of this Agreement.

G. The parties agree, consistent with Article 19 (Management Rights), that the Hospital maintains the ultimate financial, operational and legal responsibility of providing appropriate staffing. The parties agree that the Hospital has the right to amend the terms of the staffing levels set forth in the Hospital Staffing Plan, except the Nurse-to-patient staffing levels contained within the girds that specify staffing levels for nurses, which may only be amended by the Hospital upon at least thirty (30) days' notice to the Committee and the Union. Prior to implementation of the proposed changes, a special Committee meeting will be held within seven (7) days for the purpose of reviewing such proposed amendment. A majority vote of the Committee shall approve such proposed amendments. If the Hospital's proposed amendments are not so approved by the Committee, the dispute shall be referred immediately to mediation pursuant to the following procedure[:]

. . .

Proposed changes to the Nurse-to-patient staffing levels may not be implemented by the Hospital until the expiration of the time period set forth in Subparagraph G(3) above.

(Doc. #1-1, pp. 43–44.)

RMC characterizes the Grievance as a staffing plan dispute and argues the sole dispute resolution measure available is the mediation procedure outlined in Article 38, Section G. The Union argues the Grievance arises from RMC's alleged breach of terms set out in Article 3, not Article 38. Specifically, the Union contends that Article 38 encompasses "disputes concerning adequate nurse-to-patient staffing levels of the hospital," whereas the Union's complaint clearly and expressly alleges the displacement of bargaining unit nurses, a practice prohibited under Article 3.

Upon review of the record and the parties' arguments, the Court declines to dismiss the Union's complaint. The Union alleges "RMC implemented new staffing grids that displaced bargaining unit nurses with supervisory nurses in the performance of bargaining unit work." (Doc. #1, ¶ 10.) Article 3 of the CBA states that "it is not the intent of the Hospital to displace bargaining unit employees in the performance of bargaining unit work" absent certain limited

circumstances—circumstances which RMC does not argue are appliable here. (Doc. #1-1, p. 10.) Article 14 defines the term "grievance" as "an alleged breach of the terms and provisions of this Agreement" and sets forth the procedures for initiating and pursuing a grievance. (Doc. #1-1, p. 12.) If the steps outlined in Article 14 are completed and the grievance is not resolved, Article 2 states "the Union may advance the grievance to arbitration[.]" (Doc. #1-1, p. 9.) RMC does not cite to any language within the CBA that exempts a grievance arising under Article 3 from the arbitration provisions set forth in Article 2 or Article 14. Taken together, the Union's complaint sufficiently alleges facts plausibly showing the CBA's arbitration provision is "susceptible to an interpretation that encompasses" the Union's claims. *MedCam, Inc.*, 414 F.3d at 975. Thus, the Union has done enough to survive dismissal under Rule 12(b)(6). In making this finding, the Court does not reach the merits of the Union's claims nor determine if the Union is ultimately entitled to the relief it seeks.

RMC's arguments, including those asserted in its reply brief, largely go to the evidentiary basis or merits of the Union's claims and are not well-suited for resolution on a Rule 12(b)(6) motion, which focuses on the sufficiency of the complaint. Additionally, RMC's cited legal authority relies largely on cases that were decided at the summary judgment stage, where the court and the parties have the benefit of discovery and a more developed record. If warranted, RMC may reassert its arguments during a later stage of this proceeding.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant RMC's Motion to Dismiss Plaintiff's Complaint (Doc. #11) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: February 24, 2021            UNITED STATES DISTRICT JUDGE