IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NATIONAL NURSES ORGANIZING COMMITTEE-MISSOURI & KANSAS/ NATIONAL NURSES UNITED, | ) ) ) ) |
| Plaintiff, | ) Case No. 20-CV-00903-SRB |
| v. | ) ) ) |
| MIDWEST DIVISION-RMC, LLC d/b/a RESEARCH MEDICAL CENTER, | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff National Nurses Organizing Committee-Missouri & Kansas/ National Nurses United's (the "Union") Motion for Summary Judgment (Doc. #21), as well as Defendant Midwest Division-RMC, LLC's ("RMC") Cross-Motion for Summary Judgment (Doc. #36). The Court held oral argument on the motions on April 27, 2021. For the reasons discussed below, the Union's motion (Doc. #21) is granted and RMC's motion (Doc. #36) is denied.[1]

### I. BACKGROUND

This arbitration enforcement suit arises from a collective bargaining agreement between RMC and the Union. The Union represents employees of various employers in both Kansas and Missouri, including a bargaining unit of registered nurses ("RN Bargaining Unit") employed by RMC, which operates an acute-care hospital located in Kansas City, Missouri. The Union filed this suit pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

---

[1] RMC's cross-motion for summary judgment raises similar facts and arguments. The Court has reviewed all briefs and exhibits pertaining to the cross-motion, and the rulings herein dispose of both motions.

§ 185(a), and seeks a court order compelling arbitration under the parties' Collective Bargaining Agreement ("CBA"). The relevant facts, briefly summarized below, are largely undisputed.

The Union and RMC are parties to the CBA, which is effective from October 16, 2018, to May 31, 2021. On June 24, 2020, RMC implemented new staffing grids. The Union asserts that RMC's new staffing grids required supervisory nurses to perform work that, under the terms of the CBA, should be performed by members of the RN Bargaining Unit. The Union contends those staffing grid changes violate Article 3 of the CBA, which states in relevant part that "[i]t is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work." (Doc. #1-1, p. 10.)[2] Based on those implemented staffing grid changes, the Union initiated the grievance procedure outlined in Article 14 by filing a grievance (the "Grievance") on July 15, 2020.

After the Union initiated the Grievance, RMC notified the Union on July 19, 2020, that it would not process the Grievance. RMC contends that any dispute involving staffing plans is not subject to the CBA's grievance or arbitration procedures. Following RMC's refusal to arbitrate, the Union requested a list of arbitrators from the Federal Mediation and Conciliation Service ("FMCS") as instructed in Article 2 of the CBA. On July 23, 2020, the FMCS responded to the Union's request and provided the parties with a panel of proposed arbitrators. On July 28, 2020, RMC acknowledged that it had received the FMCS's proposed panel, but again reiterated that it believed the matter was exempt from arbitration. Due to RMC's continued refusal to arbitrate the Grievance, the Union initiated suit on November 11, 2020, seeking a court order compelling RMC to proceed to arbitration.

---

[2] All page citations herein refer to pagination automatically generated by the CM/ECF filing system.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if (1) the moving party "shows that there is no genuine dispute of material fact" and (2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering cross-motions for summary judgment, the standards by which the motions are decided do not change. *See Hudson Specialty Ins. Co. v. Brash Tygr, LLC*, No. 11-00306-CV-W-SWH, 2012 WL 12870258, at *2 (W.D. Mo. Mar. 30, 2012), *aff'd*, 769 F.3d 586 (8th Cir. 2014). In turn, "[t]he court must evaluate each party's motion on its own merits." *Milburn v. Zurich Am. Ins. Co.*, 478 F. Supp. 3d 789, 791 (E.D. Mo. 2020) (citation and quotation marks omitted).

## III. DISCUSSION

"It is well established that federal judicial policy overwhelmingly favors arbitration of labor disputes." *UAW v. Gen. Elec. Co.*, 714 F.2d 830, 832 (8th Cir. 1983) (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals sets forth four key principles that govern an arbitration dispute arising under Section 301 of the LMRA:

> (1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.

*Int'l Union v. Trane U.S. Inc.*, 946 F.3d 1031, 1033 (8th Cir. 2020) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–51 (1986)).  The presumption of arbitration may be overcome "(1) where the collective bargaining agreement contains an express provision clearly excluding the grievance involved from arbitration; or (2) where the agreement contains an ambiguous exclusionary provision and the record evinces the most forceful evidence of a purpose to exclude the grievance from arbitration." *Id.* (citing *Gen. Elec. Co.*, 714 F.2d at 832).

The parties agree the CBA is a valid agreement, thus making the crucial question one of arbitrability.  The Union argues the Grievance is subject to arbitration.  RMC, on the other hand, contends the Grievance is a dispute "exempt from the grievance and arbitration provisions of the parties' [CBA]" because it arises pursuant to Article 38.  (Doc. #36, p. 2.)  "The determinative question," in turn, "is whether the collective bargaining agreement at issue here is susceptible of an interpretation that covers the grievance at issue." *Int'l Bhd. of Elec. Workers v. GKN Aerospace N. Am., Inc.*, 431 F.3d 624, 627 (8th Cir. 2005) (citations and internal quotation marks omitted).  "Ordinarily, evidence of agreement to arbitrate a particular type of dispute is best found in the arbitration provision itself." *Id.* at 628.

The Union alleges RMC's actions violate Article 3 of the CBA, which states in part:

ARTICLE 3
BARGAINING UNIT WORK

It is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work. It is understood, however, that nothing in this Agreement shall preclude members of management from performing bargaining unit work when such work occurs during the course of training, in the event of an emergency, due to scheduled or unscheduled employee absences, due to an increase in patient census or workload, consistent with past practice and/or when such work or assistance is otherwise necessary for the timely provision of quality patient care.

(Doc. #1-1, p. 10.) Article 14 defines a "grievance" and sets forth the procedures a party must follow when asserting and resolving grievances (the "Grievance Procedures"):

ARTICLE 14
GRIEVANCE

SECTION 1. DEFINITIONS

    A. Grievance: An alleged breach of the terms and provisions of this Agreement.

    B. Grievant: A unit member, group of unit members, or the Union.
…

SECTION 2. GENERAL PROCEDURES

    A. If a grievance effects more than one Unit or department of the Hospital, and relief is unavailable from the immediate supervisor, it may be submitted immediately at Step Two. All grievances must state the specific contractual provision(s) of this agreement allegedly violated, the specific incident(s) . . . that give rise to the grievance and the remedy sought.

. . .

[Next follows a two-step procedure for presenting grievances for resolution. If the grievance is not resolved at Step One, the grievance proceeds to Step Two.]

(Doc. #1-1, pp. 18–20.) Grievances that are not resolved by the Grievance Procedures outlined in Article 14 may advance to arbitration as set forth in Article 2, the CBA's arbitration provision.

Article 2 states, in relevant part:

ARTICLE 2
ARBITRATION

SECTION 1. APPEALS TO ARBITRATION

If the grievance is not resolved after completion of Step 2 of the Grievance Procedure, the Union may advance the grievance to arbitration by first submitting a written demand . . . for arbitration to the Hospital's Chief Nursing Officer or previously authorized designee within thirty (30) calendar days of receiving the Step 2 response and, second, within the same thirty (30) days of receipt of the Step 2 response, requesting . . . to the Federal Mediation and Conciliation Service ("FMCS") for a list of eleven (11) arbitrators who have hospital arbitration experience. . . .

5
Case 4:20-cv-00903-SRB   Document 43   Filed 04/28/21   Page 5 of 10

(Doc. #1-1, pp. 9–10.) Taken together, the parties agreed to arbitrate any unresolved grievance, defined broadly as an alleged breach of the terms or provisions of the CBA, absent an appliable exclusion.

With these contractual provisions in mind, the Court considers whether the Grievance, "on its face," implicates an alleged breach of the CBA's terms or provisions under Article 14 and Article 2. *Marathon Ashland Petroleum, LLC v. Int'l Bhd. of Teamsters, Loc. No. 120*, 300 F.3d 945, 949 (8th Cir. 2002). In doing so, the Court's task "is to look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008). The Grievance at issue specifically alleges a violation of "ART 3, Bargaining Unit Work + All Applicable [Sections of Agreement]" and, in describing the nature of the grievance, states:

> Currently + ongoing the hospital intends to displace bargaining unit (BU) RNs with supervisory RNs in the performance of BU work as expressed in the hospital's staffing grids they implemented 6/28/2020 in which they removed RNs in the BU.

(Doc. #1-2, p. 2.)

The Court finds the Grievance presents a dispute which, on its face, implicates Article 3. The Grievances alleges both a current and ongoing displacement of bargaining unit nurses with supervisory nurses in the performance of bargaining unit work, an act or practice that Article 3 expressly restricts. The CBA does not exempt a violation or breach of Article 3 from either the Grievance Procedures outlined in Article 14 or the arbitration provisions of Article 2. The Court cannot say with "positive assurance" that the CBA "is not susceptible of an interpretation" that covers the Grievance. *See GKN Aerospace*, 431 F.3d at 627 (citation omitted) ("[A]n order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

RMC contends that Article 38 is an express contractual provision that clearly exempts the Grievance from arbitration. Article 38 states in relevant part:

## ARTICLE 38
## STAFFING COMMITTEE

SECTION 1. GENERAL

A. The Hospital shall have a staffing system based on the assessment of patient needs in conformance with the accreditation requirements of The Joint Commission and a Hospital Staffing Plan as required by the Missouri Department of Health & Human Services.

B. The Hospital's Staffing Plan provides the basis for acuity based staffing decisions within the Hospital by providing guidance on Nurse-to-patient staffing levels for staffing coverage in patient care units at the Hospital. A copy of the approved nurse staffing levels from the Hospital Staffing Plan shall be provided to the National Nurses United Professional Practices Committee (NNUPPC) members and made available to the bargaining unit RNs in all patient care departments.

C. Changes to the staffing plan for patient care services shall be developed based on the level and scope of care that meets the needs of the patient population, including patient acuity, the frequency of the care to be provided, and a determination of the level of staff that can most appropriately provide the type of care needed.

. . .

E. The parties agree that the number of staff assigned to a Unit may vary depending upon various factors, such as the patient acuity on the unit, and patient census levels. Variations in staffing levels, either up or down, that are justified by patient acuity shall not be considered deviations from the applicable nurse staffing level. The parties recognize that deviations from the staffing levels may be necessary due to changes in patient volume, unscheduled absences and other factors. The Hospital will make reasonable efforts to return the Unit to staffing that meets the applicable Nurse-to-patient staffing levels when deviations from the staffing levels occur, including but not limited to utilizing PRN, agency, on call, and overtime hours. A Nurse's temporary absence from the Unit during the course of his or her shift shall not be considered deviations from the staffing plan.

F. Disagreements among the Committee members or between the Hospital and the Union regarding issues covered by this Article, including disagreements related to staffing plans and the methods to monitor compliance with the plans, that cannot be resolved mutually by the parties shall not be subject to the grievance and arbitration provisions of this Agreement, any dispute resolution process other than mediation, as set forth in Paragraph G below, or administrative or other legal challenge. Upon a vote of at least fifty percent (50%) of the Committee members,

> unresolved disputes of among the Committee members that involve a pattern of nurse staffing on a particular Unit that is inconsistent with the applicable staffing levels may be referred to mediation, as set forth in Paragraph G below. No more than three (3) disputes may be referred to mediation each contract year of this Agreement.
>
> G. The parties agree, consistent with Article 19 (Management Rights), that the Hospital maintains the ultimate financial, operational and legal responsibility of providing appropriate staffing. The parties agree that the Hospital has the right to amend the terms of the staffing levels set forth in the Hospital Staffing Plan, except the Nurse-to-patient staffing levels contained within the grids that specify staffing levels for nurses, which may only be amended by the Hospital upon at least thirty (30) days' notice to the Committee and the Union. Prior to implementation of the proposed changes, a special Committee meeting will be held within seven (7) days for the purpose of reviewing such proposed amendment. A majority vote of the Committee shall approve such proposed amendments. If the Hospital's proposed amendments are not so approved by the Committee, the dispute shall be referred immediately to mediation pursuant to the following procedure[.]
>
> . . .

(Doc. #1-1, pp. 43–44.)

In arguing that Article 38 governs the Grievance, RMC urges the Court to look beyond the Grievance's reference to Article 3 and to focus on the alleged violative conduct: RMC's implementation of staffing grids. RMC argues any staffing plan-related dispute is subject to the mediation procedures of Article 38(1)(F), and contends that because the "actual dispute concerns the staffing grids" RMC implemented, not the displacement of bargaining-unit nurses, Article 38 controls. (Doc. #37, p. 24.) RMC, in essence, characterizes the Grievance's citation to Article 3 as a "Trojan horse" intended to confuse and distract the Court from the actual issue. (Doc. #41, p. 1.)

The Court does not find RMC's proffered interpretation of the CBA persuasive. Article 38 sets forth the guidelines for establishing and changing the "Hospital's Staffing Plan," which "provides the basis for acuity based staffing decisions within the Hospital by providing guidance on Nurse-to-patient staffing levels for staffing coverage in patient care units at the Hospital."

(Doc. #1-1, p. 42.)  Section (1)(F) of Article 38 states that "[d]isagreements . . . regarding issues covered by this Article, including disagreements relating to staffing plans and the methods to monitor compliance with the plans . . . shall not be subject to the grievance and arbitration procedures of this Agreement[.]"  (Doc. #1-1, p. 43.)  The Court reads the language of Section (1)(F) in light of Article 38 as a whole, which discusses staffing plans in relation to acuity-based staffing coverage and nurse-to-patient staffing levels.  The Grievance itself does not allege or implicate a dispute about acuity-based staffing decisions or nurse-to-patient staffing levels under Article 38.  Instead, the gravamen of the Grievance is RMC's displacement of bargaining-unit employees with supervisory employees—a practice restricted by Article 3 that was revealed through RMC's implementation of an allegedly-violative staffing grid.  Given the specific allegations set forth by the Union in the Grievance, combined with the fact that Article 38 lacks specific language indicating the parties intended Article 38 to encompass any and all staffing-related disputes, the Court finds that Article 38 does not "clearly exclude" the dispute from arbitration.  *See Trane U.S. Inc.*, 946 F.3d at 1033; *see also Sysco Minn., Inc. v. Teamsters Loc. 120*, 958 F.3d 757, 764 (8th Cir. 2020) ("When the intent of the parties is unambiguously expressed in a collective bargaining agreement, that expression controls, and the court's inquiry should proceed no further.") (citation and alterations omitted).  In turn, RMC fails to overcome the presumption of arbitration in this case.

     RMC argues, in the alternative, that even if the Grievance were subject to arbitration, the Grievance fails to allege an actual violation of the CBA, which RMC contends is "a condition precedent to the Union's right to advance a grievance to arbitration."  (Doc. #41, p. 5.)  RMC argues the Grievance's allegation that the Hospital "intends to displace bargaining unit (BU) RNs [with] supervisory RNs" only alleges a future intent to displace bargaining-unit employees,

which is not sufficient to trigger arbitration under Article 2 and Article 14.  (Doc. #41, p. 5.)  The Union contends this argument is for an arbitrator, not the Court, to decide.  The Court agrees.

To the extent RMC argues that a breach of Article 3 has not yet occurred, that argument deals with the merits of the Grievance, a matter which must be left to the arbitrator.  *See Trane U.S. Inc.*, 946 F.3d at 1033 ("courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration").  To the extent RMC contends that the Union has not satisfied a condition precedent for arbitration, whether or not "the procedural prerequisites for arbitration" have been met is a question belonging to an arbitrator, not the Court.  *Int'l Ass'n of Bridge, Struct., Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Prod.*, 359 F.3d 954, 957 (8th Cir. 2004) ("Procedural arbitrability issues . . . include allegations of waiver, delay, or a like defense to arbitrability.").  RMC's argument on this point is denied.

In sum, the Court finds the arbitration provision in the CBA is binding on the parties and determines that the Grievance is subject to arbitration.  Accordingly, the Court grants judgment as a matter of law in favor of the Union.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the Union's Motion for Summary Judgment (Doc. #21) is GRANTED, and Defendant RMC's Cross-Motion for Summary Judgment (Doc. #36) is DENIED.  RMC is hereby compelled, pursuant to the Court's authority under Section 301 of the Labor Management Relations Act, to attend arbitration as provided in Article 2 of the parties' CBA.  This action is accordingly dismissed.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: April 28, 2021　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE